LEE *v.* BYRD; *et vice versa.*

Nos. 7358, 7365.   DECEMBER 23, 1929.

*C. A. Williams,* for plaintiff in error.

*Slater & Moore, Clyde M. Wheless,* and *R. G. Oberry Jr.,* contra.

HILL, J.   The court of ordinary was established prior to the adoption of the constitution of 1877, and the incumbent was given the name and style of ordinary.  Civil Code, § 4776.  It was provided that the ordinaries should be elected by the people of their respective counties, and that the terms of office should be for four years.  § 4777.  The jurisdiction of the court of ordinary extended to probate of wills, administration of estates, and kindred matters, as specified in § 4790.  The ordinary was given jurisdiction over certain county matters, as specified in §§ 4796 and 4798. In article 6, section 6, of the constitution of 1877 it was declared that "the powers of a court of ordinary, and of probate, shall be vested in an ordinary for each county," that "the courts of ordinary shall have such powers, in relation to roads, bridges, ferries, public buildings, paupers, county officers, county funds, county taxes, and other county matters, as may be conferred on them by law," that "the ordinary shall hold his office for the term of four years, and until his successor is elected and qualified."  Civil Code (1910), §§ 6520, 6521, 6522.

(a)   An incumbent in office as ordinary, under the foregoing provisions of the constitution and laws, is a county officer within the meaning of article 11, section 2, paragraph 1, of the constitution (Civil Code, § 6599), as amended by adoption of the act approved August 14, 1914 (Acts 1914, p. 43), which provides:  "The county officers shall be elected by the qualified voters of their respective

counties, or districts, and shall hold their offices for four years. They shall be removed on conviction for malpractice in office; and no person shall be eligible to any of the offices referred to in this paragraph, unless he shall have been a resident of the county for two years and is a qualified voter," and within the meaning of the Civil Code, § 258(7), which provides: "No person shall be eligible to hold any county office in any county of this State, unless he shall have been bona fide a citizen of the county in which he shall be elected or appointed at least two years prior to his election or appointment, and is a qualified voter entitled to vote." See *Cooper* v. *State*, 101 *Ga.* 783 (29 S. E. 22); *Culbreth* v. *Cannady*, 168 *Ga.* 444 (148 S. E. 102).

(b) The case differs from *McLain* v. *State*, 71 *Ga.* 279 (3), where it was held that a county school commissioner (not elected by the people) is not such a county officer as is rendered incompetent by statute to act as a jury commissioner; and from *Barnes* v. *Watson*, 148 *Ga.* 822 (4) (98 S. E. 500), where it was held that the members of the board of tax-assessors of McDuffie County "are not 'county officers,' within the meaning of that expression as used in" article 11, section 2, paragraph 1, of the constitution; and from *Richter* v. *Board of Public Education*, 149 *Ga.* 32 (3) (99 S. E. 28), where it was held that the superintendent of schools, while an officer of the board, was "not such a county officer as the law requires to be elected by the people, and whose eligibility is fixed by the Civil Code, § 258(7)."

■ Under application of the provisions of the constitution and laws referred to above, a person who is not a qualified voter is not eligible to the office of ordinary of a county.

■ In article 2, section 1, paragraph 1, of the constitution (Civil Code of 1910, § 6395) it is declared: "After the year 1908, elections by the people shall be by ballot, and only those persons shall be allowed to vote who have been first registered in accordance with the requirements of law." In article 2, section 1, paragraph 3, (§ 6397) it is declared: "To entitle a person to register and vote at any election by the people, he shall have resided in the State one year next preceding the election, and in the county in which he offers to vote six months next preceding the election, and shall have paid all taxes which may have been required of him since the adoption of the constitution of Georgia of 1877, that he may have had

an opportunity of paying agreeably to law. Such payment must have been made at least six months prior to the election at which he offers to vote, except when such elections are held within six months from the expiration of the time fixed by law for the payment of such taxes."

(a)  Under the foregoing provisions, registration is one of the essentials to qualification as a voter.  *Goolsby* v. *Stephens,* 155 *Ga.* 529, 538 (117 S. E. 439) ; *Fairburn School District* v. *McLarin,* 166 *Ga.* 867, 870 (144 S. E. 765) ; *Culbreth* v. *Cannady,* supra. Payment of taxes is one of the essentials to lawful registration and to qualification as a voter.

(b)  If a person has not paid his taxes as provided in the constitution, but nevertheless is registered as a voter in due time before a given election, such registration is void, and can not be given efficacy by subsequent payment of the taxes.

(c)  A person elected to the office of ordinary, who had registered as a voter but had not paid his taxes as provided in the constitution, but who did pay his taxes after registration, and before the decision in a quo warranto proceeding to remove him from office, was not a qualified voter, and for that reason was ineligible to the office.

(d)  This case differs on its facts from *Widincamp* v. *Wood,* 167 *Ga.* 57 (144 S. E. 900), in which the disabilities were successfully removed before the decision of that case.

■  The term of office of an ordinary being for four years and until his successor has been elected and qualified, he has such interest as will authorize him to bring quo warranto proceedings, to oust a successful candidate after that candidate has assumed the office, on the ground that the occupant is ineligible to hold the office.

■  Under application of the foregoing principles, the petition without amendment alleged a cause of action, and the judge did not err in overruling the general demurrer interposed by the respondent. If there was error in allowing the amendment to the petition after the hearing, the amendment was unnecessary to state a cause of action, and did not render the original petition demurrable, and its allowance was no cause for a reversal.

■  The uncontradicted evidence that was admitted without objection, considered in connection with the agreed statement of facts, demanded the finding against the respondent as specified in the verdict directed by the court.  If there was error in any of the rul-

■

ings on admissibility of evidence, the evidence was not of such character as could have affected the result, and the rulings show no cause for a reversal.

■ The rulings in the foregoing divisions require an affirmance of the judgment of the trial court on the main bill of exceptions. In these circumstances no ruling will be made on the motion to dismiss the writ of error.

■ In the final judgment the court not only declared the respondent ousted from the office, but also declared the office to be vacant. The cross-bill of exceptions assigns error on so much of the final judgment as declares the office to be vacant. Applying to the pleadings and the evidence the constitution and laws declaring that the term of office of the ordinary of a county shall be four years and until his successor is elected and qualified, the petitioner was entitled to the office, holding over under his prior commission, and the office was not vacant. In this connection see *Shackelford* v. *West,* 138 *Ga.* 159, 161 (74 S. E. 1079) ; *Stephenson* v. *Powell,* 169 *Ga.* 406 (150 S. E. 641).

*Judgment affirmed on main bill of exceptions, and reversed on cross-bill. All the Justices concur.*

GILBERT, J., concurring specially. I concur in the rulings made. I deem it proper to say that the expression in the last part of the opinion, "and the office was not vacant," should be explained. Under the law, the previous term extended over until a successor of the occupant was elected and qualified, and in that sense there was no vacancy. The incumbent officer was merely extended in his previous term; but as to the ensuing term in this case, from January 1, 1929, to January 1, 1933, there was a vacancy, because no person legally qualified to hold the office had been elected for that term. "The word 'vacancy' as applied to a public office has no technical meaning. Its ordinary and popular meaning is that the office is unoccupied and without an incumbent who has a lawful right to continue therein until the happening of some future event. As a general rule, when a new office is created, a vacancy at once exists. Hence the term 'vacancy' applies to an existing office without an incumbent, although it has never been filled. For example, when a new county is created, the offices, before they are filled, are considered as being technically vacant. An office is not vacant so long as it is supplied in the manner provided by the con-

stitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law when it is not occupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event. A distinction may be drawn between a vacancy in office and a vacancy in term. By a vacancy in an office is usually meant that the office is empty, and that it is without an incumbent who has a right to exercise its functions and take its fees or emoluments. . . A vacancy may occur so as to permit the appointing or electing power to appoint or elect some person to the office, although the incumbent continues physically to occupy it, and has the right to do so until the qualification of his successor. The power to fill vacancies in elective offices is sometimes vested in an appointing officer. In such cases and for the purpose of making a temporary appointment to fill vacancies, something more is required than the mere absence of any incumbent in the office. The mere expiration of the term of the incumbent does not create a vacancy which can be filled by such appointment. Especially when it is provided that there shall be a new election in the case of a tie vote, the failure of an election by reason of the fact that the opposing candidates have an equal number of votes will not constitute a vacancy to be filled by appointment for the residue of the term." 22 R. C. L. 437-8, §§ 91-92. This is in accord with *Shackelford* v. *West,* supra. In that case the successor to Judge West was supplied by appointment of the Governor and to be confirmed by the Senate. The Senate adjourned without acting upon the appointment. Thereafter the Governor appointed and commissioned Shackelford, and under such appointment he claimed the office. The court held that the term of office of Judge West extended until his successor was appointed and qualified, and since the successor had not been confirmed by the Senate, and therefore had not been able to qualify, that the term of office of Judge West extended over until there was such duly appointed and qualified successor, and in that sense there was no vacancy to which an appointment could be made in vacation. The court did not hold, and could not have held, that there was no vacancy in the ensuing term of office which could not be filled by appointment when duly confirmed by the Senate. In *Stephenson* v. *Powell,* supra, the same general language was used as to vacancy.

628

In that case Stephenson was elected by the grand jury as a member of the board of education, March, 1926, for a term of four years, the term therefore ending in 1930. On April 3, 1929, the judge appointed Powell to fill what he supposed to be a vacancy. The term of Stephenson had not expired, and before such expiration, on May 18, 1929, Powell at that time contending that he was legally entitled to serve from the date of his appointment, the judge revoked the order appointing Powell. Stephenson's term still had not expired. In the contest over the office this court used the general term that no vacancy had occurred. Under the facts Stephenson's term, at the time the suit was filed and heard, had not expired.

BECK, P. J. I concur in the judgment; but I am of the opinion that while the office is not vacant, in that the former ordinary continues to hold the office and discharge the duties thereof until his successor is duly elected and qualified, the situation is such that the proper authorities should call a special election to fill the office for the four years following the term just expired.