OVERTON *v.* GANDY.

No. 7618. MAY 16, 1930. REHEARING DENIED MAY 24, 1930.

*Hay & Gainey*, for plaintiff.
*Louis S. Moore* and *Titus & Dekle*, for defendant.

GILBERT, J. The exception in this case is to a judgment refusing to sanction and permit the filing of an information in the

nature of a writ of quo warranto. The proceeding was brought by one alleging that he had been recommended by the grand jury, and pursuant to such recommendation was appointed by the judge of the superior court of Thomas County to the office of notary public ex-officio justice of the peace for the 637th district G. M., Thomas County, known as the Thomasville district. The petition sets out the order of appointment by the judge, in which order it is recited: "This appointment is made over objection and protest that the said A. E. Overton is not an eligible voter. The Governor may or may not consider this objection." The petition alleges that the Governor has refused to issue a commission to petitioner, and sets out a letter in which the Governor assigns as a reason for his refusal that a number of citizens of the county have protested the right of the petitioner to hold the office, on the ground that he was not an eligible voter. The recommendation by the grand jury was made at the October, 1929, term of the superior court, and the order of appointment is dated 28th day of October, 1929. As to eligibility as a voter, the petition alleges: "The said A. E. Overton moved to Thomasville, Georgia, from the State of Alabama in January, 1928, since which time he has been, and yet is, a citizen and resident of the 637th district G. M. of Thomas County, Georgia. At the time he was so recommended for appointment by the grand jury on October 25, 1929, he had not registered as a voter of said county, but did thereupon promptly register and pay all taxes required of him by the State of Georgia, and, at the time the said appointment was made, on October 28, 1929, he was a duly registered voter of said county." The petition also alleges that Gandy "is continuing to undertake to perform the duties and functions of the said office and claim its emoluments on the pretext that the commission issued to him does not expire until a new commission is issued to and accepted by his successor."

■ Is the judgment complained of such a final judgment as will afford a basis for a direct bill of exceptions to this court?

In *Avery* v. *Bower*, 170 *Ga.* 202 (152 S. E. 239), it was held that a failure to obtain leave of the court to file such an information was an amendable defect. In *Milton* v. *Mitchell*, 139 *Ga.* 614, 616 (77 S. E. 821), and in *Garrett* v. *Cowart*, 149 *Ga.* 557, 560 (101 S. E. 186), this court said: "In this State there is no statute specifically prescribing the procedure in a quo warranto proceeding

or an information in the nature thereof." In the latter case attention is called to the fact that the rigidity in the common-law procedure as to quo warranto and proceedings in the nature thereof have been relaxed in this State. We are not prepared to rule that it is absolutely essential to procure the assent of the court before the filing of a proceeding of this nature. It would seem that it would be proper and allowable to file such a proceeding without the assent of the court, to take the usual procedure, subject to demurrer. The ruling of the court on the demurrer would, as in other cases, be the test of its sufficiency. Overruling a general demurrer would amount to assent; sustaining the demurrer would constitute the contrary. However that may be, we deem it unnecessary to decide that question in this case, especially where practical results may be obtained without going into mere technicalities, and especially where the sufficiency of the petition may be finally adjudicated on the present record, rather than to remand the case for the sake of mere formalities. It seems the part of common sense to treat the judgment refusing to permit the filing of the quo warranto purely as a judgment holding that the petition did not set out a cause of action. Whether or not the petition might have been filed without the previous assent of the court, in the present instance such permission was sought and refused, and to treat this judgment other than as a final judgment on which a direct bill of exceptions to this court could be sued out would be to deny the applicant a judicial review. Compare *Churchill* v. *Walker,* 68 *Ga.* 681, and reference to that case in *Garrett* v. *Cowart,* supra. For the reasons stated we hold the judgment reviewable.

■ Is the applicant ineligible to hold the office because of the provision of the Civil Code (1910), § 258, par. 7? It is there declared: "No person shall be eligible to hold any county office in any county of this State, unless he shall have been bona fide a citizen of the county in which he shall be elected or appointed at least two years prior to his election or appointment, and is a qualified voter entitled to vote." That section expressly applies to county officers, and to no other officers. Is a notary public and exofficio justice of the peace a county officer? If not, that section of the Code has no application and will afford no bar to the eligibility of the applicant. Notaries public ex-officio justices of the peace stand upon the same basis as the justices of the peace.

The constitution provides: "There shall be in each militia district one justice of the peace." Art. 6, sec. 7, par. 1; Civil Code (1910), § 6523. "Commissioned notaries public, not to exceed one for each militia district, may be appointed by the judges of superior courts in their respective circuits, upon recommendation of the grand juries of the several counties. They shall be commissioned by the Governor for the term of four years, and shall be ex-officio justices of the peace, and shall be removable on conviction for malpractice in office." Art. 6, sec. 8, par. 1; Civil Code (1910), § 6526. The justices of the peace are elected by the voters of the militia district; not by the county as a whole, as provided for county officers. Civil Code (1910), § 6599. Notaries public ex-officio justices of the peace are appointed by the judges of the superior court on recommendation of the grand jury. This has been the law since the ratification of the constitution of 1877. Under the constitution of 1868 such notaries were appointed by the Governor. Under both constitutions they are commissioned by the Governor.

In *Long* v. *State,* 127 *Ga.* 285, 286 (56 S. E. 424), Mr. Justice Atkinson, speaking for the court, said: "A justice of the peace is not a municipal officer in any sense. A justice of the peace sometimes performs functions which, under other circumstances, are performed by a county officer. While a justice of the peace might possibly be classed as in a certain sense a county officer, this is really not the true way of designating the office that he holds. The justice court over which he presides is a part of the State judicial system. It is a constitutional court, and there is constitutional provision for his election by the legal voters of his district. He is an officer of the State. While his functions can be exercised only in a given county, and generally in the district of his residence only, he is nevertheless an officer of the State." And see *Bashlor* v. *Bacon,* 168 *Ga.* 370 (147 S. E. 762). The *Long* case was not a unanimous decision, because of the absence of the Chief Justice, but there was no dissent. We think the reasoning sound, and accordingly hold that a notary public ex-officio justice of the peace is not a county officer. It follows that section 258 of the Civil Code of 1910 has no application in the present case. Section 4661 provides: "All persons are eligible to the office of justice of the peace who are entitled, in the county in which the district is situated, to vote for members of the General Assembly, who have

been three months in the district next preceding the election and who do not labor under any disqualification." Overton has resided in the district more than the required length of time—three months. (Incidentally it may be remarked that his appointment was not invalidated or affected in any way by reason of the recital, in the order of his appointment, that it was made over "objection and protest.") We take judicial notice that the first election for members of the General Assembly after Overton's appointment will be in November, 1930. The allegations of the petition show all qualifications, unless he is disqualified because of non-payment of taxes "six months prior to the election at which he offers to vote."

Under the constitution, every citizen of this State, laboring under no disabilities of age or otherwise, is an elector and entitled to register and vote. Art. 2, sec. 1, par. 2; Civil Code (1910), § 6396. See also Code § 34. The next paragraph of the constitution, found in the Civil Code, § 6397, provides that "to entitle a person to register and vote at any election of the people he shall have resided in the State one year next preceding the election, and in the county in which he offers to vote six months next preceding the election, and *shall have paid all taxes* [italics ours] which may have been required of him . ' . at least six months prior to the election at which he offers to vote." To what election, therefore, would this provision point in the case of the applicant, Overton? He paid all such taxes and registered a few days prior to his appointment by the judge. The Code, § 4661, provides that justices of the peace must be qualified to vote for members of the General Assembly, and we think the same rule applies to notaries public and ex-officio justices of the peace. So construed, it follows that if such notary public has resided in the district three months next preceding his appointment and is a qualified voter in an election for members of the General Assembly, he is an eligible voter in so far as it affects his appointment to that office. He was appointed in December, 1929. The next election for members of the General Assembly after such appointment is in November, 1930. All taxes having been paid prior to registration in December, 1929, the applicant was an eligible voter at the time of his appointment. The Civil Code (1910), § 2165, declares: "Among the rights of citizens are the enjoyment of personal security, of personal liberty, private property and the disposition thereof, the elective franchise,

*the right to hold office* [italics ours] unless disqualified by the constitution and laws," etc. *White* v. *Clements,* 39 *Ga.* 232. The right of the citizen to hold office is the general rule. Civil Code (1910), § 2166. Ineligibility is the exception. § 258; *Avery* v. *Bower,* supra. Thus it will be seen that Overton is a citizen of Thomas County, Georgia, and that among his rights is the right to hold office, unless disqualified by the constitution and laws of the State. It appearing from the allegations of the petition that at the time of his appointment by the judge of the superior court Overton was a citizen duly registered and entitled to vote for members of the General Assembly, and was not a county officer, whose eligibility is affected by Civil Code (1910) § 258, par. 7, he was not ineligible to hold the office for any reason appearing in the record.

■ Quo warranto, or an information in the nature of quo warranto, is the appropriate remedy to try title to a public office. Civil Code (1910), § 5451; *Stanford* v. *Lynch,* 147 *Ga.* 518 (94 S. E. 1001), and cit. The fact that the commission is withheld presents no bar to the right of action. The uncertainty of title may furnish the reason for withholding the commission. In many of the cases in which by quo warranto title has been adjudicated, the petitioner had not received his commission. The suit was necessary to obtain the commission. In some cases the adverse party held commission. All public officers must be presumed ready to perform their duties. It must be presumed that the Governor of the State is law-abiding, that he withholds the commission in this case merely to await an adjudication of title, and that when that has been done he will promptly issue a commission to that person held by the courts to be entitled thereto. The petitioner can not qualify for or enter upon the duties of the office until he has a commission. It is to be assumed that when the title is adjudicated and the commission received Overton will qualify and enter upon the discharge of his duties. If Overton must have his commission and qualify before he can bring his suit, and the Governor will not issue the commission until the title has been adjudicated, then Overton has a right but no remedy, for he can not bring mandamus against the Governor. *Bonner* v. *State, ex rel. Pitts,* 7 *Ga.* 473; *State ex rel. Low* v. *Towns,* 8 *Ga.* 360. "A commission issued by the Governor of the State is prima facie evidence of title to the office in the person named therein; but it is not conclusive in cases where

the Governor, in issuing the commission, has acted only in a ministerial capacity." *McCants* v. *Layfield,* 149 *Ga.* 231 (99 S. E. 877), and cit., *Bennett* v. *Public Service Commission,* 160 *Ga.* 189 (127 S. E. 612), and cit. In issuing a commission to a notary public ex-officio justice of the peace, the Governor acts in a ministerial capacity. The appointment is made by the judge of the superior court on recommendation of the grand jury. *Steinheimer* v. *Jones,* 114 *Ga.* 349 (40 S. E. 241). Constitution of 1877, art. 6, sec. 8, par. 1; Civil Code (1910), § 6526. The case of *Pool* v. *Perdue,* 44 *Ga.* 454, was decided prior to the adoption of the constitution of 1877, when, according to the constitution of 1868, appointments of such officers were made by the Governor. Constitution of 1868, art. 5, sec. 6, par. 4; Civil Code of 1873, § 5106. Accordingly the ruling in that case is not applicable in the present case. *Judgment reversed. All the Justices concur.*

ON MOTION FOR REHEARING.

C. T. Gandy, defendant in error, filed a motion for rehearing on the ground that the court has overlooked Civil Code (1910) § 4650, which provides: "The governor shall not issue a commission to any notary public ex-officio justice of the peace, unless it shall appear from the order of appointment that such appointment was made at the term of the court next preceding the vacancy, or at some succeeding term after such vacancy has occurred." Movant points out paragraphs one, two, and five of the petition of Overton, where it is alleged that "In October, 1925, C. T. Gandy, a citizen of said county, was appointed notary public and ex-officio justice of the peace . . upon recommendation of the grand jury serving at the October, 1925, term. The four-year term of office provided by the commission so issued to the said C. T. Gandy expired on the 26th day of October 1929," and that in pursuance of the "recommendation of the grand jury . . the presiding judge, on the 28th day of October, 1929, passed an order appointing the said A. E. Overton to the said office." The motion for rehearing makes no complaint of any ruling made by this court, except in the respect just stated.

There are several reasons why no rehearing should be granted. First: The application of Code § 4650 was not mentioned anywhere in the record, or in the brief of either of the parties to the case. If that section has any bearing, it must be solely for the

reason that inferentially the trial judge, in refusing to permit the information in the nature of a quo warranto to be filed, based his action, at least to some extent, on that section. This, however, is negatived by the very terms of the order passed by the judge, appointing Overton, and again in the opinion and judgment rendered by the judge, in refusing to grant the permit sought. Moreover, the brief for Gandy, defendant in error, expressly states that he does not contend that he has been appointed to hold beyond his term, and "he is ready to surrender the office upon the commission and qualification of his successor." He admits the accuracy of the statements made in the bill of exceptions and the statement of the case in the brief of plaintiff in error, and that the same "presents all of the facts necessary for a full decision of all the matters in controversy between the parties, and he would welcome a decision which would cover all the issues and make it unnecessary to bring the case again to this court." He further states that "the Governor has not refused to issue the commission, but has delayed its issuance until a court of competent jurisdiction shall have had an opportunity to pass upon the legal qualifications of the plaintiff in error."

Second: The Code section in question obviously was passed by the General Assembly to prevent premature recommendations and appointments for the office by trickery or fraud at such time as the public and the incumbent were unaware that applicants were seeking recommendation and appointment. The language of the section is not clear, but to give it a literal meaning would be to subvert the very purpose for which it was enacted. Moreover, the statute must be construed in the light of the constitution; and the constitution provides that when appointments to such office are made by the judges of the superior court upon recommendation of the grand jury, the appointees "shall be commissioned by the Governor." The duty of making such appointment is on the judge, not on the superior court, and his action is not reviewable by the Supreme Court. *Steinheimer* v. *Jones,* 114 *Ga.* 349 (supra).

Third: If it be conceded that movant properly construes the Code section, then the order appointing C. T. Gandy in October, 1925, according to the facts alleged in the petition, was void, and Gandy had been holding the office for more than four years on a void appointment, with no title whatever to the office. It would

necessarily follow from this that there has been a vacancy in the office from October, 1925, until the recommendation and appointment of Overton in 1929.

These seem to be sufficient reasons for overruling the motion, and it is so ordered.