McGILL *v.* SIMMONS; *et vice versa.*

Nos. 7881, 7882.  FEBRUARY 11, 1931.

*Paul L. Lindsay,* for plaintiff.

*Sam L. Olive* and *Mark Bolding,* for defendant.

Hill, J. Mrs. Ida R. McGill as a citizen and taxpayer of the County of Fulton, filed her petition in the nature of quo warranto, praying that J. Walton Simmons be ousted from the office of clerk of the superior court of Fulton County on the ground that Simmons was disqualified to hold the office at the time of the election, for the reason that he failed to pay his State and county taxes for the years 1924, 1925, 1926, 1927, 1928, and 1929. He was elected to fill the unexpired term of Tom C. Miller, clerk of the superior court of Fulton County, who died on February 22, 1930. The case was tried before the judge upon the following agreed statement of facts, which contains (briefly stated) all the material allegations and averments set out in the pleadings: At a special election legally held in Fulton County, Georgia, on April 9, 1930, J. W. Simmons was elected to the office of clerk of the superior court, defeating J. M. George by a majority of 591 votes. George had been appointed as clerk to succeed Miller, deceased, by the county commissioners. Simmons was a resident of Fulton County for the years 1924 and continuously so till the present time, and is 43 years old. He had ample opportunity to pay said taxes during the years of 1924-5-6-7-8-9, but failed to pay any State and county taxes until April 4, 1930, for all those years. On April 4, 1930, Simmons paid all taxes due by him to the State of Georgia and to the County of Fulton, "the said payment covering in full all taxes due the State or any counties thereof, together with all costs and interest due on said taxes, and being in full of any and all such taxes due by him." After so paying, he registered, on April 4, 1930, as a voter in the County of Fulton, by taking and signing the oath prescribed by law for such registration, before the tax-collector, who placed the name of Simmons on the list of qualified voters to be turned over to the board of registrars of said county. Simmons was commissioned by the Governor as clerk, gave the bond, and took the oath required by law, and is now the holder of said office, having been inducted into it on April 15, 1930. His name appeared on the biennial registration list of voters for the year 1928. Fred F. Edwards, the deputy clerk who entered

the present case on the docket of the superior court, was a deputy clerk under the late Tom C. Miller and under J. M. George and was appointed a deputy clerk by respondent on or about April 15, 1930. The relator, Mrs. Ida R. McGill is and has been for sixty-two years a citizen of Fulton County, and is a property owner. She has paid all of her property taxes, but the records do not show that she paid a poll tax for 1924 and 1927.

The prayers of the petition were denied, and judgment was rendered in favor of the defendant. Exception was taken to this judgment. There was a cross-bill of exceptions, not material here. Art. 11, sec. 2, of the constitution of Georgia (Code, § 6599). "The county officers shall be elected by the qualified voters of their respective counties, or districts, and shall hold their offices for four years. They shall be removed on conviction for malpractice in office; and no person shall be eligible to any of the offices referred to in this paragraph, unless he shall have been a resident of the county for two years, and is a qualified voter." The clerk of the superior court is a county officer, and the qualifications for that office are fixed by the constitution and laws of the State. Art 2, sec. 1, par. 4, of the constitution (Code, § 6398) provides: "Every male citizen of this State shall be entitled to register as an elector, and to vote in all elections in said State, who is not disqualified under the provisions of section 2 of article 2 of this constitution, and who possesses the qualifications prescribed in paragraphs 2 and 3 of this section, or who will possess them at the date of the election occurring next after his registration, and who, in addition thereto, comes within either of the classes provided for in the five following subdivisions of this paragraph." Art. 2, sec. 1, par 3 (Code, § 6397), declares: "To entitle a person to register and vote at any election by the people, he shall have resided in the State one year next preceding the election, and in the county in which he offers to vote six months next preceding the election, and shall have paid all taxes which may have been required of him since the adoption of the constitution of Georgia of 1877, that he may have had an opportunity of paying agreeably to law. Such payment must have been made at least six months prior to the election at which he offers to vote, except when such elections are held within six months from the expiration of the time fixed by law for the payment of such taxes." The legislature, under authority of the constitu-

tion, provided for registration of voters. The registration law appears in Park's Code, §§ 36 et seq. Such of these sections as may be applicable to the present case are as follows: It is therein provided (§ 36): "At the time when he begins the collection of taxes for each year, the tax-collector of each county in this State shall open a book or books, to be designated as 'voters' books,' containing on the first page thereof, or near the first page thereof, the following oath," etc. Section 47(a) provides: "The tax-collectors of the several counties of this State are required to keep a book to be called the permanent qualification book, upon which all persons desiring to qualify as electors shall be required to qualify as now required by the constitution and laws of the State. Such electors upon qualification shall sign their names in alphabetical order, and shall be subject to examination by the board of registrars as now provided by law." Section 38 provides: "The tax-collector shall, in each year in which there is a general election to be held for governor and members of the General Assembly, close the voters' books for said election six months before the date of the election." Section 39 provides: "No one shall be allowed to register for said election unless he shall have paid all taxes due by him at least six months before the date of the election." The court will take notice of the fact that the year 1930 was one in which there was to be held a general election; and under the sections just cited, the tax-collectors of the different counties in the State were required to close the voters' book six months before the general election on November 4, 1930, or on May 5, 1930. It appears that Simmons paid all his taxes on April 4, and on the same day registered as a voter. The registration was therefore made before the voters' books were closed and after all taxes had been paid. The day on which general elections are held is Tuesday after the first Monday in November biennially. Civil Code (1910), §§ 80, 94, 95. By § 48 it is declared: "Within ten days after closing the voters' books, as provided in § 38, the tax-collector shall file with the county registrars an accurate and complete list of all the names signed in the voters' books between the time when he began collecting taxes and the closing of said books, arranged in alphabetical order, and by militia districts, and city wards, and also showing the dates in that year when persons will arrive at full age, or will have resided in the State and county the requisite time, as sworn

to in the voters' books." And by § 59 : "Each person whose name is upon the registration list for the general election provided for in the foregoing section shall be entitled to vote at the general State election for said year and all primaries to nominate candidates for offices to be filled at said general State election, and also at the Federal election in November of said year, . . and all other elections to be held for any purpose during said year after the filing of said registration list, or during the succeeding year."

The controlling question is a proper construction of the constitutional provision : "To entitle a person to register and vote . . he shall have resided, . . and shall have paid all taxes which may have been required of him . . at least six months prior to the election at which he offers to vote." We are of the opinion that this refers to the *general election,* and by a reading of the sections of the code referring to registration it will be observed that most of the sections refer in terms to the *general election;* and we think that within the meaning of the constitutional provision quoted above, it did not contemplate a special election, but that if one was registered and qualified to vote at the next general election he was also qualified to vote at special elections. The first election after April 15, 1930, at which the defendant in error could offer to vote was the general biennial election held on November 4, 1930. From the record it appears that the defendant is generally a qualified voter, his name is on the list of registered voters for the County of Fulton for the year 1930, and the laws under which he registered were passed with reference to *general elections;* and the conclusion reached is that the elections to which the six-months period for the payment of taxes, provided for in the constitution, referred are to *general elections,* and not special elections, and therefore he would be entitled to vote in all general elections occurring after the six-months period, and also in special elections occurring before the general election. *Overlon* v. *Gandy,* 170 *Ga.* 562, 566 (153 S. E. 520). The plaintiff relies upon *Lee* v. *Byrd,* 169 *Ga.* 622 (151 S. E. 28) ; but that case is different in its facts from the present case. There the person receiving a majority of the votes for ordinary was not a qualified voter, and his registration was void; and it was there held that registration is one of the essentials to qualification as a voter, and that election was held at the time of the *general election* for State and county officers. In

the present case it appears from the agreed statement of facts that the defendant in error paid all taxes required of him, and that after such payment he registered and qualified as a voter; and therein this case is differentiated from the *Byrd* case. Neither is *Shaw* v. *DeVane*, 169 *Ga.* 702 (151 S. E. 347), in point. In that case it appeared that the election for aldermen was held on May 30, 1929, and that at that time Shaw had not paid his State and county and municipal taxes for the years 1927 and 1928. He had registered without paying these taxes. The plaintiff cites also *Culbreath* v. *Canady*, 168 *Ga.* 444 (148 S. E. 102). In that case it was alleged that Canady was ineligible to hold the office of superintendent of schools, because she was not a registered voter of the county, not having at or before the election, or since, registered her name in the voters' book of the county, and having failed to subscribe to the oath of registrants for voting; and alleged that she had not been a bona fide citizen of the county two years before the election. It thus appears that in the *Culbreath* case the respondent was not a registered voter, and therefore was ineligible to hold the office. Neither is the case of *Widincamp* v. *Wood*, 167 *Ga.* 57 (144 S. E. 900), controlling. The facts were very different from the facts in the present case. That case involved the qualifications of the judge of the city court created by a special statute. There was no general law fixing the qualifications. A man was elected judge when he had not resided in the county the requisite length of time; and the legislature, pending the proceedings to oust the judge, amended the law creating the office so as to change the time of residence, thus making the judge qualified to hold the office. The question whether the judge was a qualified voter was not involved.

We hold that the defendant, at the time he was elected to the office of clerk, was a qualified voter. No general election could be held between that time and November 4, 1930. The first election contemplated under the law after the defendant had qualified and registered as a legal voter was the *general election* to be held on November 4, at which he was entitled to vote; and being so entitled, he was eligible under the constitutional provision cited above, and under the Civil Code (1910), § 258, par. 17. Therefore we are of the opinion that the court below did not err in the judgment excepted to.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Beck, P. J., absent for providential cause.*