TERRELL *et al. v.* FOREST PARK CONSOLIDATED SCHOOL DISTRICT *et al.*
YAEGER *et al. v.* VALLEY POINT CONSOLIDATED SCHOOL DISTRICT *et al.*

 89

Nos. 8928, 8929. JULY 12, 1932.

*Olin T. Lester, J. Wightman Bowden,* and *D. W. Mitchell,* for plaintiffs in error.

*O. J. Coogler, J. A. McFarland,* and *John C. Mitchell, solicitor-general,* contra.

GILBERT, J. ■ The Civil Code (1910), as adopted, provided in § 61 for the qualification of voters in intermediate or special elections. The General Assembly in 1911 enacted a more comprehensive law on the subject (Ga. Laws 1911, p. 167). In section 2 of the act of 1911 are found these words: "Be it further enacted by the authority aforesaid, that section 61 of said Code [1910, volume 1] be repealed, and in lieu thereof the following section is hereby enacted." Then follows the new law providing for "the qualifications of voters for special elections." The latter statute is found in Park's Ann. Code and in Michie's Code, § 61. The annotators of both those codes intimate doubt as to the constitutionality of the act of 1911 under the constitution of Georgia, which prohibits the repeal of any section of the code by mere reference to the title. Civil Code (1910), § 6445. That constitutional point is not in any way made in the present certified question, and accordingly will not be considered. It may be stated, however, that even if the act of 1911, sec. 2, fails to measure up to the constitutional requirement for the repeal of a code section, it would necessarily be true that the repealing clause, which expressly enacts "that all laws or parts of laws in conflict with the provisions of this act be and the same are hereby repealed," would repeal all of section 61 of the Code of 1910 in conflict with the act. · That question, however, is not important in this case, for the reason that as to bond elections the act of 1911 itself has been nullified by a constitutional amendment submitted to the people and ratified in 1918 (Ga. Laws 1918, p. 99). That amendment to the constitution is also found in 10 Park's Code Supp. 1922, and in Michie's Code, § 6563. It provides that "all laws, charter provisions, and ordinances heretofore passed or enacted, providing special registration of the voters of counties, municipal corporations, and other political divisions of this State to pass upon the issuance of bonds by such counties, municipal corporations, and other political divisions, are hereby declared to be null and void; and the General Assembly shall hereafter have no power to pass or enact any law providing for such special registration." Thus it will be seen that there is no valid law in Georgia providing for special registration of voters for bond elections. That fact makes it unnecessary to consider that part of the certified question which recites that "the fact that the provisions of the act of 1911, . . relating to registration for special elections, were not

specifically made to apply, by the provisions of § 143 of the Georgia School Code, to elections for bonds in local-tax school districts," etc. Since we are concerned with bond elections, it can not possibly make any difference whether the act of 1911 was made to apply to the provisions of § 143 of the Georgia School· Code. It has several times been decided by this court that school districts are political divisions of the State, and therefore the amendment of 1918 is applicable to bond elections in school districts. There can be no valid State election, or any county or school-district election for bonds, without registration. Civil Code (1910), §§ 34, 47; *Chapman* v. *Sumner Consolidated School District,* 152 *Ga.* 450 (109 S. E. 129) ; *Goolsby* v. *Stephens,* 155 *Ga.* 529 (117 S. E. 439). The constitutional amendment of 1922, supra, does not apply to special elections for any purpose except for bonds. For that reason it did not apply to any question raised in the case of *Houston* v. *Thomas,* 168 *Ga.* 67 (146 S. E. 908), or *Price* v. *Hodges,* 172 *Ga.* 871 (159 S. E. 241), or in *Crye* v. *Pearce,* ante, 85. In *Fairburn School District* v. *McLarin,* 166 *Ga.* 867 (144 S. E. 765), the questions now dealt with were not involved.

■ Instruction on the second question is desired by the Court of Appeals only if the first question should be answered in the affirmative. It having been answered in the negative, the second question will not be considered.

■ The third question is also answered in the negative. The statute, by its express terms, requires the petition to be signed "by registered qualified voters." That, of course, means that the voter who signs the petition must be not only registered but also qualified to register and to vote. It is well known that the list of voters on the registration books is constantly changing, new names being added and names thereon being purged and stricken from the list when such persons become disqualified by reason of non-payment of taxes, death, removal, conviction of crime, etc., or for other sufficient reason. The General Assembly knew, therefore, that any existing evidence of the right to vote because petitioners' names were on the registered list may have become changed, that is, some of them may have become disqualified for the reasons already stated. Therefore, to make assurance doubly sure that all persons petitioning the school board for an election should be really qualified under the law to participate in such election, the board of

trustees is required to determine whether there is a sufficient number of petitioners by examining each name and ascertaining whether or not each petitioner is both "registered and qualified" to register and to vote. The constitution requires registration, and the qualifications are prescribed for the right to register. If the petition presented to the board of trustees itself shows that the required number of registered and qualified voters have not signed the petition, the non-jurisdictional fact would appear on its face. In such case an order of the board of trustees calling the election would be null and void. That is based upon the same principle that a judgment of any court or quasi-judicial body is absolutely void where there is an absence of jurisdictional facts. If the petition on its face shows the required number of registered qualified voters and the board of trustees call the election, and the election is held, the order calling the election and the election itself are prima facie valid and legal, and the burden is upon the objectors to show invalidity. *Harrell* v. *Whigham,* 141 *Ga.* 322 (80 S. E. 1010). In *Wilson* v. *Dunn,* 143 *Ga.* 361 (85 S. E. 198), the court was dealing with an issue as to whether a petition for an election, under the Civil Code (1910), § 1535 et seq., contained the names of a sufficient number of citizens legally entitled to vote to constitute the required jurisdictional fact. This court held that "the calling of the election determined, at least prima facie, that all of the jurisdictional facts required by law for such purpose were made to appear, and that the petitioners were of sufficient number as required by statute in such case." In that case an injunction was sought to prevent the collection of taxes, after the election had been held, and four years had elapsed during which time the complainants had taken no action and had paid their taxes. The court held that the election could not be attacked.

In *Ray* v. *Swain,* 148 *Ga.* 203 (96 S. E. 209), a number of citizens sought to enjoin the assessment, levy, and collection of taxes where the ordinary had called an election in a school district for the purpose of making an extra tax levy in such district. The petition for calling the election was lost, and was not produced at the hearing. Petition for injunction was filed, in which it was alleged that "the petition [for the election] did not show on its face that it contained the signatures of one fourth of the qualified voters of the district; that this fact is jurisdictional and can not

be supplied by aliunde evidence, and the court erred in receiving such evidence over appropriate objection." This court held: "The burden is upon the plaintiffs, after such an election has been held, to show that the requisite one fourth of the qualified voters did not petition the ordinary. *Wilson* v. *Dunn*, 143 *Ga*. 361 (85 S. E. 198). The admission of aliunde proof of this fact by the defendants was not, in view of the above ruling, prejudicial to the plaintiffs in error, and therefore is not cause for reversal." The requirement that "one fourth of the registered qualified voters" must sign the petition for an election is jurisdictional. The lack of jurisdiction may appear on the face of the petition, or it may not. In the latter case it may be shown on the trial of a proceeding to validate the bonds. Jurisdiction must exist, or the election is void. If its existence is only prima facie, citizens and taxpayers can not be deprived of their right to test the question in a judicial proceeding. If the school board of trustees can conclusively determine the number of petitioners necessary merely by looking to the registration lists, the decision would rest alone upon prima facie evidence, subject to rebuttal. If the right to rebut is denied, taxpayers who must furnish the proceeds with which school bonds are to be paid off might be required by the school board to pay such taxes unjustly, because in fact the required number of registered qualified voters had not petitioned for the election. That would put it in the power of the school board, if they should act arbitrarily, to perpetrate injustice or even fraud. It is not meant to impute to such boards intentional arbitrary action. We merely state what could occur in future. *All the Justices concur.*