CLOUD *v.* MAXEY.

No. 14327. DECEMBER 1, 1942. REHEARING DENIED DECEMBER 14. 1942.

*Shackelford & Shackelford* and *Hawes Cloud,* for plaintiff.

*E. P. Shull, Hamilton McWhorter Jr., W. W. Armistead,* and *Erwin & Nix,* for defendant.

JENKINS, Justice. ■ As to the first two grounds of attack on the validity of the election, because the registration lists contained the names of persons not legally entitled to vote, and omitted names of persons legally entitled to vote, the Code, § 24-1707, provides that "When a vacancy occurs in the office of ordinary in any county, it shall be the duty of the clerk of the superior court . . to order an election to take place within 20 days from the date of said order," and publish such notice.

On the call of any *special* election, the county registrars are required "to furnish to the managers of said special election two lists, one composed of the names of voters entitled to vote by reason of their registration for the last general election, and the other made up of the names of those entitled to vote by their subsequent registration as hereinbefore provided for, . . and no one shall be entitled to vote . . in said special election . . unless his name is upon one of the lists furnished by the registrars." The registrars are also required to "purge the list of registered voters prepared for the last general election of any names subsequently disqualified by failure to pay poll-taxes becoming due subsequent to the last general election;" and also to purge the list "of all persons who will not be qualified to vote at said election in the same manner as preparing and purging the registration list for the general election." § 34-407 and preceding sections.

Notwithstanding these statutory requirements, § 34-3101 provides that "No election shall be defeated for non-compliance with the requirements of the law, if held at the proper time and place by persons qualified to hold it, unless it is shown that, by such non-compliance, the result is different from what it would have been had there been proper compliance." Although the statute last quoted has particular reference to mere "irregularities in the conduct of elections in matters which are merely directory," rather than "to the absence of a proper registration list" of voters, so that a total failure by county registrars to furnish the lists required by the act of 1911 as amended (§§ 34-401 to 34-407, inclusive) will invalidate an election, without regard to whether such failure is shown to affect the result of the election (*Price* v. *Hodges,* 172 *Ga.* 871, 872, 159 S. E. 241), yet a mere failure to *"purge* the

registration lists" as furnished will not constitute so vital a deficiency as will of itself void an election, in the absence of any showing that the result of the election would have been different if the lists had been purged. This was held outright in *Coleman* v. *Board of Education*, 131 *Ga.* 643 (9), 653 (63 S. E. 41). See *Chamlee* v. *Davis*, 115 *Ga.* 266 (5), 271 (41 S. E. 691); *Cole* v. *McLendon*, 109 *Ga.* 183 (3), 189 (34 S. E. 384); *Turk* v. *Royal*, 34 *Ga. App.* 717 (8) (131 S. E. 119). Although in *Price* v. *Hodges*, 172 *Ga.* 871 (supra), the *Coleman* case, 131 *Ga.* 643, 653 (supra), was included in a citation of cases having "reference to irregularities in the conduct of elections in matters which are merely directory," rather than to registration lists, and it was not there noted that the *Coleman* decision had also dealt with a failure to *"purge the registration lists,"* and had held that such a failure would not void an election, in the absence of a showing that the result would have been different, the citation of the *Coleman* case seems to have been inadvertent. The result in the *Price* case was correct, since the facts there showed that there was in effect no registration list furnished as to voters for the *school district* involved in the election, because the lists furnished contained the names of persons in two whole militia districts, covering territory beyond the school district and including many persons not living in the school district; and therefore the failure as to the lists was so fundamental as to avoid the election. However, if there be any conflict between the unanimous rulings in the two cases, with regard to a failure to "purge" otherwise proper registration lists, the *Price* decision must yield to that in the *Coleman* case, as the older authority.

Under the controlling *Coleman* decision, the special election for ordinary, on March 3, 1942, was not invalidated on the grounds assigned by the contesting petitioner, where he failed to show that the result would have been different; and where the undisputed evidence showed that the county registrars, in at least substantial conformity with the statutes, furnished the two lists as required—one the regular registration list of voters at the last general election in June, 1941, and the other a supplementary list, dated February 19, 1942, containing names of additional persons qualified to that date. The rule announced would hold true, even though the contentions of the petitioner as to the required time of

payment of 1941 poll-taxes, and as to the exclusion or inclusion of persons, by purge or amendment of the registration lists, on account of non-payment or payment of poll-taxes, be taken as correct; and even though the lists were not purged of those who had not paid their 1941 poll-taxes due December 20, and *"might"* not have contained the names of additional persons who *"might"* have paid poll-taxes for previous years at some time after the preparation of the registration list for the June, 1941, general election, for which they had previously been ineligible to vote by failure to pay such taxes within the required six months before that general election. Especially is there no merit in the first two grounds of attack, since it was neither alleged nor proved even that the name of any disqualified person in fact appeared on the lists as furnished; nor that any person, entitled to vote by a payment of poll-taxes after the lists were prepared, even if otherwise entitled to vote, was in fact precluded from voting by not being on the lists as furnished, on which he was in fact entitled to be placed by a previous registration and a compliance with other statutory requirements. See, in this connection, *Terrell* v. *Forest Park Consolidated School District,* 175 *Ga.* 88, 90 (165 S. E. 122) ; *Cole* v. *McLendon,* supra; *Chapman* v. *Sumner Consolidated School District,* 152 *Ga.* 450 (2, *a-g*) (109 S. E. 129).

The preceding holdings render it unnecessary to determine the particular questions raised, as to the levy and time of payment on December 20 of poll-taxes (see Code, §§ 92-108, 2-5004, 92-5001, 92-5102; *Sims* v. *Kennedy,* 184 *Ga.* 822, 826, 193 S. E. 876, and cit.; *Davis* v. *Warde,* 155 *Ga.* 748 (5, *b, c*), 784, 118 S. E. 378) ; or as to the application only to general elections, and not to special elections, of the 1932 constitutional amendment (Code, § 2-603) requiring payment of poll-taxes "at least six months prior to the election at which he offers to vote, except when such elections are held within six months from the expiration of the time fixed by law for the payment of such taxes," and the effect of that amendment on the special election here involved (see *Sims* v. *Kennedy,* 184 *Ga.* 822, 824 (supra) ; *Kemp* v. *Chalker,* 193 *Ga.* 544, 19 S. E. 2d, 263; *McGill* v. *Simmons,* 172 *Ga.* 127 (2), 157 S. E. 273) ; or as to whether a poll-tax must be paid at least at some time before a *special* election, even though less than six months has expired from the preceding December 20, when the annual poll-tax

becomes due, before the date of the special election, in order to entitle a voter already on a registration list to remain thereon, or to entitle a person not on the list to be placed thereon. See *McGill* v. *Simmons,* 172 *Ga.* 127 (4), 131 (supra) ; *Overton* v. *Gandy,* 170 *Ga.* 562, 566 (153 S. E. 520) ; *Calloway* v. *Tunnel Hill School District,* 51 *Ga. App.* 101 (2) (179 S. E. 737).

■ Under the constitution, article 11, section 2, paragraph 1, no person is eligible to hold office as a county officer unless he "is a qualified voter." Code, § 2-8301. An ordinary, being a county officer within the meaning of this requirement, is not eligible to office unless he is a "qualified voter." *Lee* v. *Byrd,* 169 *Ga.* 622 (151 S. E. 28). Upon the remaining ground of attack on the incumbent's right to be elected to the office of ordinary, because of his alleged failure to pay his 1929, 1930, and 1932 poll-taxes, the testimony of the incumbent as to his payment of such taxes authorized the finding in his favor. No discussion is necessary as to what taxes it may be necessary for one to pay in order to be eligible to hold the office of ordinary under the constitutional provision stated, and under the constitutional amendment of 1932 (Code, § 2-603), relating to the payment of poll-taxes as a requisite to registration and voting.

■ Exceptions are taken to the admission of testimony to the effect that the petitioner while a candidate and his opponent, before the election for ordinary, both agreed to the use by the registrars of the registration lists of voters as actually made up, on the grounds of objection, that the officials were required to observe the law; that any contrary agreement by the candidates was illegal; that in so far as it might have been sought by this evidence to show an estoppel against the petitioner, the incumbent did not plead such an estoppel; and that in no event would an estoppel or waiver avail as to such a matter of public policy. Since, under the rulings in the first division of this opinion, a finding for the incumbent was demanded as to the grounds of attack on the alleged failure of the registrars to purge or furnish proper registration lists —without regard to any question of waiver or estoppel under this testimony, its admission, whether or not erroneous, was in any event harmless to the petitioner.

■ There is no merit in the exception to the exclusion from evidence of entries on the general execution docket kept by the

clerk of the superior court, showing that an execution for unpaid personal property and poll-taxes had been issued against the respondent on December 20, 1929, on the objection that the original execution had not been accounted for. As to the respondent's failure to pay the 1930 and 1932 tax executions, the petitioner introduced the executions themselves. It is unnecessary to decide whether or not, under the best evidence or primary and secondary evidence rules (Code, §§ 38-203, 38-204), the entries from the general execution docket were admissible to prove the issuance of the 1929 tax execution, in the absence of an accounting for the execution itself, since the exclusion of this evidence could not have been prejudicial. This is true since the respondent, both in his testimony and in his pleading, admitted such issuance, and only contended and testified that he had paid the three executions.

■ In a final exception, to the exclusion of testimony by the respondent, sought to be elicited for the petitioner on cross-examination for the purpose of showing that the respondent was a tax defaulter in that he had failed to return property for taxation and pay taxes thereon, the testimony excluded on objection that it was irrelevant was as follows: "Q. You decided that it wasn't necessary to return that property? A. I am a law-abiding citizen, or try to be. Q. You failed to pay taxes on the property you owned? A. *I paid taxes on what property I owned.*" Since obviously this testimony, if admitted, would have been more harmful than beneficial to the petitioner, its exclusion, regardless of the question of admissibility, shows no reversible error.

*Judgment affirmed. All the Justices concur.*