COX *v.* PETERS *et al.*

No. 17626. ARGUED OCTOBER 9, 1951—DECIDED NOVEMBER 13, 1951.

500

*C. Baxter Jones Jr., Meyer Goldberg, Raymond Reid,* and *John Griffin,* for plaintiff.

*Eugene Cook, Attorney-General, M. H. Blackshear, Assistant Attorney-General, Edward E. Dorsey, B. D. Murphy, M. F. Goldstein, G. C. Thompson,* and *H. B. Black Jr.,* for defendants.

HAWKINS, Justice. (After stating the foregoing facts.) If we should endeavor to follow out the labyrinthine paths taken by the arguments of able counsel for the respective parties, both orally and by brief, and should take up and discuss the various philosophies of government presented thereby, together with the arguments predicated thereon, and the many authorities cited in the exhaustive briefs, and if it were necessary to discuss in detail the history and the merits and demerits of the county unit system, it would not be surprising if the court should lose sight of the fact that what we have here presented is simply a suit for damages, of which this court has jurisdiction because the construction of certain provisions of the Federal and State Constitutions is involved, and because the constitutionality of a statute of this State is drawn in question. Article 6, section 2, paragraph 4 of the Constitution of Georgia (Code, Ann., § 2-3704). The plaintiff alleges that he has been damaged, and is seeking to recover money damages from the defendants because they, as Chairman and Secretary, respectively, of the Democratic Executive Committee of Georgia, in the performance of their official duties, made a certain certificate as to who was the nominee of the Democratic party for Governor of the State of Georgia in the Democratic Primary of 1950, whereby the plain-

tiff's vote was diluted, devalued, and reversed, because the certification was made upon the county unit basis under the provisions of Code §. 34-3212, commonly referred to as the Neill Primary Law. Counsel for the plaintiff very frankly stated in their brief that "Essentially all of the different constitutional violations alleged are aimed at one point—to invalidate the county unit statute and therefore the county unit system"; it being the contention of the plaintiff that, if this statute be invalid for any one or more of the reasons alleged, the conduct of the defendants was to him a single wrong on which he is entitled to bring a single suit.

The right to vote for Governor in a Democratic primary does not arise under the Constitution or laws of the United States. See, in this connection, Minor v. Happersett, 88 U. S. 162 (21 Wall. 162, 22 L. ed. 627); Ex parte Yarbrough, 110 U. S. 651 (4 Sup. Ct. 152, 28 L. ed. 274); McPherson v. Blacker, 146 U. S. 1 (13 Sup. Ct. 3, 36 L. ed. 869); Guinn v. United States, 238 U. S. 347 (35 Sup. Ct. 926, 59 L. ed. 1340); Breedlove v. Suttles, 302 U. S. 277 (58 Sup. Ct. 205, 82 L. ed. 252); Snowden v. Hughes, 321 U. S. 1 (64 Sup. Ct. 397, 88 L. ed. 497).

It is contended by the plaintiff, however, that the right to vote in such a primary does arise under the Constitution and laws of the State of Georgia, and that the equal-protection clause of the Fourteenth Amendment to the Federal Constitution protects him in this right.

It is thus apparent that the main and controlling question in this case is whether or not the provisions of the Constitution of the State of Georgia, set out in the foregoing statement of facts, and the provisions of Code §§ 79-205 and 79-206 have application to a party primary in Georgia held for the purpose of nominating candidates for that party to run in the general election.

By reference to the provisions of the Constitution, referred to in the statement of facts, which the plaintiff contends confer upon him the right to vote in the primary, it will be seen that in each and every instance the reference to the right to vote is in "elections in said State," "elections by the people," "all elections in said State," "elections by the people shall be by ballot"; and the Code sections referred to confer the elective franchise upon citizens. Not a single article, section, or paragraph of the Con-

stitution of 1945 dealing with elections makes any reference to a party primary. At the time these provisions were first placed in our Constitution, and at the time of the enactment of the Code sections above referred to, there was no such thing as a party primary in Georgia. For a history of the origin of the party primary see Turman v. Duckworth, 68 Fed. Supp. 744.

In 29 C. J. S. 150, § 112, it is said: "Whether primary elections are within the intent and meaning of the term 'election', as used in constitutional and statutory provisions, often depends on the manner in which the term is used and the purpose of the provisions, and also on the factor of whether primary elections were in existence at the time the provisions were adopted or enacted." In Newberry v. United States, 256 U. S. 232 (41 Sup. Ct. 469, 65 L. ed. 913), it is said: "The Seventeenth Amendment, which directs that Senators be chosen by the people, neither announced nor requires a new meaning of election and the word now has the same general significance as it did when the Constitution came into existence—final choice of an officer by the qualified electors. Hawke v. Smith, 253 U. S. 221 [40 Sup. Ct. 495, 64 L. ed. 871]. Primaries were then unknown. Morever, they are in no sense elections for an office, but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified electors. General provisions touching elections in constitutions or statutes are not necessarily applicable to primaries—the two things are radically different." Our own State courts have held that a party primary is not an "election" within the meaning of that term as used in our criminal statutes. In George v. State, 18 Ga. App. 753 (90 S. E. 493), it is said: "Primary elections are not within the meaning of section 660, subsection 6, of the Penal Code (1910), which provides that any person who shall deposit a ballot 'at any election' in any name other than his own, as appears on the list of registered voters prescribed by law, shall be guilty of a misdemeanor." To the same effect see Shea v. State, 46 Ga. App. 729 (169 S. E. 46). In McGill v. Simmons, 172 Ga. 127 (157 S. E. 273), it is held that the constitutional provision, that "To entitle a person to register and vote . . he shall have resided . . and shall have paid all taxes which may have been required of him . . at least six months prior

to the election at which he offers to vote," refers to the general election, and not to a special election. To the same effect see *Overton* v. *Gandy*, 170 *Ga.* 562 (153 S. E. 520). For cases from other jurisdictions holding that general provisions touching elections in constitutions or statutes are not necessarily applicable to party-nominating primaries, but usually refer to general elections, see United States *v.* Gradwell, 243 U. S. 476, 487 (37 Sup. Ct. 407, 61 L. ed. 857), and cases there cited; People *v.* Cavanaugh, 112 Cal. 674 (44 Pac. 1057); State *v.* Woodruff, 68 N. J. L. 89 (52 Atl. 294); Commonwealth *v.* Wells, 110 Pa. St. 463 (1 Atl. 310).

It is insisted by the plaintiff, however, that the primary in Georgia is an integral part of the election machinery of the State, and for this reason comes within the protection of the constitutional provisions relied on, and he cites in support of this contention United States *v.* Classic, 313 U. S. 299 (61 Sup. Ct. 1031, 85 L. ed. 1368); Smith *v.* Allwright, 321 U. S. 649 (64 Sup. Ct. 757, 88 L. ed. 987); Nixon *v.* Herndon, 273 U. S. 536 (47 Sup. Ct. 446, 71 L. ed. 759); and Chapman *v.* King, 154 Fed. 2d, 460. With this contention we cannot agree, for the reason that in the State of Texas, where the Allwright and Nixon cases originated, the statute of that State *requires* a primary to be held, as is also true in the State of Louisiana, as pointed out in the Classic case, supra, and in the latter State the statute required the State to defray the expense of the primary. Such is not the case in Georgia; but, on the contrary, the holding of a primary in this State is at the option of any political party, and is not requisite to nomination or to a place on the official ballot (South *v.* Peters, 89 Fed. Supp. 672, 677); and Code § 34-3216 provides that "The expense of holding such primary elections shall be paid by the political party which causes the same to be held." It is true that in Chapman *v.* King, 154 Fed. 2d, 460, supra, the statement was made that, under the Constitution and statutory provisions there referred to, the primary in Georgia was made an integral part of the election machinery; but an examination of the opinion in that case will show that this statement was predicated in part upon the provisions of article 2, section 1, paragraph 8, of the Constitution of 1877 (Code of 1933, § 2-608). This provision in the amendment of 1908 of

the Constitution of 1877 was stricken and omitted from the Constitution of 1945; and an examination of the minutes of the Constitutional Commission, Volume 1, page 112, will disclose that it was purposely stricken and omitted from the present Constitution of this State so as to take the party primaries without the ruling in Smith *v.* Allwright, 321 U. S. 649 (supra), and leave them purely party primaries. Whether this should have been done is a matter with which this court has nothing to do. It was done, and the Constitution of 1945 was adopted by the people of this State, and is binding upon this court.

It is further contended by the plaintiff that nomination in a Democratic primary in Georgia is equivalent to election, and that for this reason the primary should be held to come within the protection of the constitutional provisions relied on. While a statement to this effect will be found in the special concurrence of Chief Justice Russell in *Clark* v. *Colquitt County Democratic Executive Committee,* 158 *Ga.* 642 (124 S. E. 40), this was not a ruling by the court, but merely an expression of the opinion of Mr. Chief Justice Russell; and while we have the highest regard for the former Chief Justice, this statement is purely obiter, and without foundation in fact or in law. In 29 C. J. S. 14, § 1 (d), it is said: "A primary election is merely a substitute for a convention. It is not an election to office, it being distinguishable from an election of officers in that it precedes such election and is merely a choice of candidates or nominees of political parties, while an election is the final choice of the entire electorate." In South *v.* Peters, 89 Fed. Supp. 672, 677, it is said: "Democratic nomination is not however the equivalent of election nor does it insure it, for much may happen before or in the final election." The nominee of a party primary cannot take the oath, occupy, discharge the duties, or receive the emoluments of the office until his final choice by the entire electorate in the general election, and a nomination by a Democratic primary in Georgia is not the equivalent of election. The allegations of the petition that only a nominee of the Democratic primary of 1950 could get his name on the ballot for the general election in that year must yield to the specific provisions of the Code (Ann. Supp.), § 34-1904, providing for the placing of names of nominees of parties upon the general election ballot by compliance with the

requirements of that section. "Where a petition alleges facts as true which are contradicted by legislative acts . . such facts cannot be held to be true, and they will not prevent the sustaining of a demurrer to the petition." *Bennett* v. *Public Service Commission of Georgia*, 160 *Ga.* 189, 192 (127 S. E. 612).

We hold that, when a political party in Georgia voluntarily elects to exercise the option of holding a primary for the nomination of party candidates under the provisions of Code § 34-3212, such primary is not an *"election"* within the meaning of that term as used in the constitutional provisions and Code sections relied on by the plaintiff; and that the trial court did not err in sustaining the defendants' demurrer and dismissing the petition and the amendment thereto. Attention is called to the fact that the plaintiff's sole claim of a right to vote in the primary is predicated upon his allegation that he is a citizen of the United States and of the State of Georgia, and is a registered, qualified voter. For this court to hold that, based upon these allegations alone, the plaintiff is entitled to vote in a Democratic primary, would be to destroy party primaries which have existed in Georgia for more than fifty years, and would open every primary, by whatever party held, to participation therein by every registered, qualified voter in Georgia, regardless of his party affiliation. No such drastic holding is required or authorized in this case.

*Judgment affirmed. All the Justices concur.*