**Harrison MANN et al., Plaintiffs,**

v.

**Levin Nock DAVIS et al., Defendants.**

**Civ. A. No. 2604.**

United States District Court
E. D. Virginia,
at Alexandria.

Argued Oct. 22, 23, 1962.

Decided Nov. 28, 1962.

Edmund D. Campbell, Arlington, Va., and E. A. Prichard, Fairfax, Va., for plaintiffs.

Henry E. Howell, Jr., Sidney H. Kelsey, and Leonard B. Sachs, Norfolk, Va., for plaintiff-intervenors.

Robert Y. Button, Atty. Gen. of Virginia, R. D. McIlwaine, III, Asst. Atty. Gen. of Virginia, David J. Mays, and

Henry T. Wickham, Richmond, Va., for defendants.

Before BRYAN, Circuit Judge, and HOFFMAN and LEWIS, District Judges.

ALBERT V. BRYAN, Circuit Judge.

Virginia's legislative apportionment statutes [1] of 1962 are here assailed as violative of the Equal Protection Clause of the Federal Constitution's Fourteenth Amendment. Plaintiffs (including intervenors) are registered and otherwise qualified voters of the State of Virginia residing, respectively, in Arlington County, Fairfax County and the City of Norfolk. Their complaint is that the apportionment reduces the value of a vote in these districts far below that of a vote in many other Senatorial and House districts of Virginia. The charge, we hold, has been proved.

The civil rights statutes, 42 U.S.C. §§ 1983 and 1988, are pleaded as authorizing the action; jurisdiction is rested on 28 U.S.C. § 1343(3). Alleging they sue on behalf of all other voters similarly situated in the Commonwealth of Virginia, as well as for themselves, plaintiffs name as defendants the members of the State Board of Elections and local election officials, together with the Governor and the Attorney General of Virginia.

The relief sought is (1) a judgment voiding the apportionment acts, (2) injunctive restraint of the defendants from conducting elections under these laws, and (3) an apportionment by the Court if the General Assembly fail, after the decree of injunction, to reapportion the State in conformity with legal standards.

█ I. Defendants move on several grounds to dismiss the complaint. However, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) unequivocally declares, contrary to the first assertion of the motion, that allegations comparable to those now before us state a claim upon which the relief here prayed may be granted. Nor is dismissal justified on the further ground that the plaintiffs have an appropriate remedy in the Virginia courts, for the "exceptional circumstances" are not here for the State remedy to oust Federal jurisdiction. Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); United States v. Bureau of Revenue, 291 F.2d 677, 679 (10 Cir., 1961); Carson v. Warlick, 238 F.2d 724, 729 (4 Cir., 1956), cert. denied, 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664 (1957). Nor is this a suit against a State barred by the Eleventh Amendment, as defendants contend. It is a suit against State officials acting pursuant to State laws, a type of action universally held appropriate to vindicate a Federally protected right. Ex parte Young, 209 U.S. 123, 155-156, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Duckworth v. James, 267 F.2d 224, 230-231 (4 Cir.), cert. denied, 361 U.S. 835, 80 S.Ct. 88, 4 L.Ed.2d 76 (1959); Kansas City So. Ry. v. Daniel, 180 F.2d 910, 914 (5 Cir., 1950). Likewise contrary to the motion, we find the complaint pleads a class action; it pleads, too, an actual controversy within the Declaratory Judgment Act, 28 U.S.C. § 2201. We sustain, however, the motion to dismiss the Governor and the Attorney General of Virginia as defendants, for they have no "special relation" to the elections in suit. Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

█ The remaining ground of the motion asks us to stay the case until the plaintiffs procure the State courts' views upon the validity of the apportionment. But in our understanding of it abstention is not appropriate here. To begin with, there is no ambiguity in the statutes; they are not in need of interpretation, for they exactly fix and announce the representation of the General Assembly districts. Nor are the Virginia Consti-

---

[1]. Chap. 635, 1962 Acts of Assembly, p. 1266, entitled "An Act to amend and reenact § 24-14, as amended, of the Code of Virginia, relating to State senatorial districts", and Chap. 638, p. 1269, entitled

"An Act to amend and reenact § 24-12, as amended, of the Code of Virginia, relating to apportionment of the members of the House of Delegates", both approved April 7, 1962.

tution's provisions, which sired the acts and are quoted in a moment, lacking in clarity. These provisions, argue the defendants, purposely do not outline the criteria by which the apportionment is to be made and advisedly leave the standards to the judgment of the General Assembly. This suggests, defense counsel urge, that Virginia's own courts should first pass upon the composition of the districts, for they are presumably more intimately acquainted with the local conditions doubtlessly weighed by the General Assembly in the passage of the acts. The answer is that there is nothing in the State Constitution referring the General Assembly to any specific local considerations peculiarly within its knowledge. Whether the acts of the Assembly are within the aim and purpose of the Constitution can, therefore, be gained only from the bare words of its clauses, fair inferences from the acts themselves and commentary evidence. This determination is thus as well within the competence of a Federal court sitting in Virginia.

Furthermore, the strong implication of Baker v. Carr, if not its command, is that the Federal three-judge court should retain and resolve the litigation. The decision was so read by the Court in Toombs v. Fortson, 205 F.Supp. 248 (N.D.Ga.1962). Nothing different can be spelled from Scholle v. Hare, 369 U.S. 429, 82 S.Ct. 910, 8 L.Ed.2d 1 (1962). That case was sent back to the State court because it had its origin there, not because the Supreme Court preferred the State court. We find no precedent for abstention in the circumstances of our case.

II. The sections of the Virginia Constitution in suit are these:

"§ 40. General Assembly to consist of Senate and House of Delegates.—The legislative power of the State shall be vested in a General Assembly which shall consist of a Senate and House of Delegates.

"§ 41. Number and election of senators.—The Senate shall consist of not more than forty and not less than thirty-three members, who shall be elected quadrennially by the voters of the several senatorial districts on the Tuesday succeeding the first Monday in November.

"§ 42. Number and election of delegates.—The House of Delegates shall consist of not more than one hundred and not less than ninety members, who shall be elected biennially by the voters of the several house districts, on the Tuesday succeeding the first Monday in November.

"§ 43. Apportionment of Commonwealth into senatorial and house districts.—The present apportionment of the Commonwealth into senatorial and house districts shall continue; but a reapportionment shall be made in the year nineteen hundred and thirty-two and every ten years thereafter."

The 1962 acts of the General Assembly established 36 senatorial districts, assigning them 40 Senators, and 70 districts for the House of Delegates, distributing 100 members among them. The only ground-rule in the State Constitution for the placement of Senators and Delegates is contained, as we have seen, in its section 43's references to "apportionment of the Commonwealth into senatorial and house districts" and subsequent "reapportionment". These, obviously, are broad dimensions. Brown v. Saunders, 159 Va. 28, 166 S.E. 105, 107 (1932).

Nevertheless, the Equal Protection Clause of the Fourteenth Amendment; as the plaintiffs rightly stress, demands that this apportionment accord the citizens of the State substantially equal representation. Plaintiffs charge that the 1962 statutes so far transgress this mandate of the Federal Constitution as to inflict "invidious discrimination" upon the plaintiffs. The injury is suffered, they aver, through their underrepresentation in the General Assembly

occasioned by the misapportionment of Senators and Delegates—their votes have been diluted because the ratio of their population to the number of their representatives is far greater than in the other districts delineated by the acts

### The Senate

The disparities in the Senate found in the 1962 apportionment acts are pointed up by the plaintiffs' evidence as follows:

A citizen of Arlington, Fairfax, or Norfolk has representation or voting power in the Senate of *less* than ½ of that possessed by a citizen of any of 6 of the 33 remaining districts in the State. Putting it conversely, his voting power is more than 2-times the voting power of any of the plaintiffs. Further, in 5 more of the districts the power of each vote is *almost twice* that of any plaintiff on an average. Thus ⅓ of the other 33 senatorial districts are nearly 100% richer in each vote's worth than are the plaintiffs' districts.

In substantiation of this summary the plaintiffs offered in evidence these figures:

Virginia's 1960 population is 3,966,949. Dividing this total by the number of Senators—40—gives an ideal representation of one Senator for each 99,174 persons.

| | Arlington | Fairfax | City of Norfolk |
|---|---|---|---|
| Population | 163,401 | 285,194 | 304,869 |
| No. of Senators | 1 | 2 | 2 |
| Population per Senator | 163,401 | 142,597 | 152,435 |

| District | Population | No. of Senators | Population per Senator |
|---|---|---|---|
| Brunswick Lunenburg Mecklenburg | 61,730 | 1 | 61,730 |
| Goochland Louisa Orange Spottsylvania City of Fredericksburg | 62,523 | 1 | 62,523 |
| Culpeper Fauquier Loudoun | 63,703 | 1 | 63,703 |
| Clarke Frederick Shenandoah City of Winchester | 66,818 | 1 | 66,818 |
| Halifax Charlotte Prince Edward City of South Boston | 67,100 | 1 | 67,100 |

|  | Arlington | Fairfax | City of Norfolk |
|---|---|---|---|
| Population | 163,401 | 285,194 | 304,869 |
| No. of Senators | 1 | 2 | 2 |
| Population per Senator | 163,401 | 142,597 | 152,435 |

| District | Population | No. of Senators | Population per Senator |
|---|---|---|---|
| Dickenson Wise City of Norton | 68,803 | 1 | 68,803 |
| Bland Giles Pulaski Wythe | 72,434 | 1 | 72,434 |
| Greensville Prince George Surry Sussex Hopewell | 72,951 | 1 | 72,951 |
| Norfolk County City of South Norfolk (now City of Chesapeake) | 73,647 | 1 | 73,647 |
| Dinwiddie Nottoway City of Petersburg | 74,074 | 1 | 74,074 |
| Appomattox Buckingham Cumberland Powhatan Amherst Nelson Amelia | 76,652 | 1 | 76,652 |

Total:  11 districts

*House of Delegates*

In the House plaintiffs contend that a vote in Fairfax has less than ¼ of the voting force of a vote in 4 districts; ⅓—or less than that—of a vote in at least 16 others; and thus the preferred districts amount to a total of 20 of the other 67 districts in the State. In addition, both Norfolk and Arlington have almost double the individual vote-weight of Fairfax; but these two have only ap-

proximately ½ the ballot-potency of 7 districts. The following figures have been adduced to vouch the contention.

With the State population at 3,966,949 each of the 100 Delegates would presumably represent 39,669 persons.

|  | Arlington | Fairfax | City of Norfolk |
|---|---|---|---|
| Population | 163,401 | 285,194 | 304,869 |
| No. of Delegates | 3 | 3 | 6 |
| Population per Delegate | 54,467 | 95,064 | 50,812 |

| District | Delegates | Population | Population per Delegate |
|---|---|---|---|
| Shenandoah | 1 | 21,825 | 21,825 |
| Wythe | 1 | 21,975 | 21,975 |
| Grayson | 1 | 22,644 | 22,644 |
| Bland | 1 | 23,201 | 23,201 |
| Loudoun | 1 | 24,549 | 24,549 |
| Gloucester | 1 | 25,359 | 25,359 |
| Franklin | 1 | 25,925 | 25,925 |
| Rockingham | 2 | 52,401 | 26,200 |
| Buckingham | 1 | 26,385 | 26,385 |
| Southampton | 1 | 27,195 | 27,195 |
| Pulaski | 1 | 27,258 | 27,258 |
| Charlotte | 1 | 27,489 | 27,489 |
| Alleghany | 1 | 28,458 | 28,458 |
| Greensville | 1 | 28,566 | 28,566 |
| Pittsylvania | 2 | 58,296 | 29,148 |
| Fluvanna | 1 | 29,392 | 29,392 |
| City of Charlottesville | 1 | 29,427 | 29,427 |
| Fauquier | 1 | 29,434 | 29,434 |
| City of Petersburg | 2 | 58,933 | 29,466 |
| Amelia | 1 | 29,703 | 29,703 |

Total: 20 districts

NOTE: In all the foregoing tabulations the population figures are 1960 census. Unless otherwise indicated the political subdivisions listed are counties. They include all cities and towns within the county boundaries, such as the cities of Falls Church and Fairfax in Fairfax County. We are concerned with both relative representation and rel-

ative voting power as between the districts. No distinction need be observed because, obviously, the number of local voters would not exceed local populations.

■ III. The next question is whether this inequality amounts to the invidious discrimination that is held to be unconstitutional. Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). True, the imbalance in the districts here appears only in population. While predominant, population is not in our opinion the sole or definitive measure of districts when taken by the Equal Protection Clause. Compactness and contiguity of the territory, community of interests of the people, observance of natural lines, and conformity to historical divisions, such as county lines, for example, are all to be noticed in assaying the justness of the apportionment. Additionally, of course, we must accept as established such reasons for the districting as are fairly conceivable or inferable in and from the result. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■ Plaintiffs here proved the inequity of the allotment of representatives on the basis of population. Thereupon the burden to adduce evidence of the presence of other factors which might explain this disproportion passed to the defendants. But none was forthcoming, if indeed it was available. In an attempt to account for the unevenness, defendants adverted to the large segment in Arlington, Fairfax and Norfolk of military or naval personnel, urging that the General Assembly might have deducted their number in determining the popular count in these areas. But this evidence was not explicit or at all satisfactory. Furthermore, it was hardly helpful for it was conceded that Service men and women could, and many of them do, qualify to vote.

There is little doubt that in Virginia population is the overriding considera-

tion in any distribution of representatives. As the Governor of Virginia stated April 7, 1962, in respect to the reapportionment legislation, "Historically, population has been utilized as the principal factor in redistricting in Virginia, although population alone has never been deemed the sole basis of redistricting". Exactitude in population is not demanded by the Equal Protection Clause. But there must be a fair approach to equality unless it be shown that other acceptable factors may make up for the differences in the numbers of people. In view of the accent Virginia has put upon population, the very words in her Constitution—"apportionment" and "reapportionment"—seem to envision popular equality. The Oxford English Dictionary (1933 ed.), volumes I and VIII, contains these definitions:

"Apportion:
"1. * * *
"2. To assign portions or shares; to divide and assign *proportionally*. * * *
"* * * *

"Proportional:
"1. * * *
"2. That is in proportion, or in due proportion; having (suitable) comparative relation; *corresponding, esp. in degree or amount.*" (Emphasis added.)

In this consideration there is no difference in status between the Senators and Delegates in their disposition throughout the State. The Senate and the House each have a direct, indeed the same, relation to the people. No analogy of the State Senate with the Federal Senate in the present study is sound. The latter is a body representative of the States qua States, but the State Senate is not its regional counterpart. State senatorial districts do not have State autonomy. The bicameral system is a creature of history and many of the reasons for its creation no longer obtain. The chief justification for bicameralism

in State government now seems to be the thought that it insures against precipitate action—imposing greater deliberation—upon proposed legislation. See I Bryce, The American Commonwealth 484 (1917 Ed.); Maddox & Fuquay, State and Local Government 130 *ff* (1962); Macdonald, American State Government and Administration 116 (6th Ed. 1960); Snider, American State and Local Government 161 *ff* (1950); compare Sikes & Stoner, Bates & Field's State Government 176 (4th Ed. 1954).

Indulging all of the reasonable inferences which may be fairly drawn from the redistricting, we can find no rational basis for the disfavoring of Arlington, Fairfax and Norfolk. No acceptable formula, plan or design is shown us to account for the disparate divisions of the State. We do not mean to establish an allowable tolerance of divergence from the ideal district—whether more or less than a specified per centum. Nor do we intend to say that there cannot be wide differences of population in districts if a sound reason can be advanced for the discrepancies. We merely say none is offered here.

Unconstitutional, invidious discrimination adverse to Arlington, Fairfax and Norfolk has been proved. The inequality in the representation and voting rights occasioned Arlington, Fairfax and Norfolk is a grave deprivation, constitutionally impermissible. That there may be other districts also disadvantaged by the reapportionment has not been overlooked.[2] But these additional deviations do not prove the apportionment right or make the plaintiffs whole. Furthermore, as we annul the acts in their entirety, the General Assembly can hereafter reexamine and reappraise the circumstances of any other prejudiced district.

IV. We will enter a judgment declaring the invalidity of the acts. It will also enjoin the defendants from proceeding under this legislation. Prior apportionment statutes have been repealed by the 1962 acts, the defendants concede, and they agree too there is no possibility here of the revival of prior apportionment statutes.

However, our preference has been, and still is, for the General Assembly of Virginia to square the injustices of the 1962 Acts. But the circumstances did not permit deferment of the determination of this suit until the next regular session of the Legislature, which convenes in January 1964. To begin with, the Senators elected in 1963 would not take office until January 1964 and would serve until January 1968. Similarly, Delegates chosen in 1963 would enter in January 1964 and be in office until January 1966. The disproportionate representations could not be righted by the 1964 General Assembly prior to 1966 in the case of Delegates, and not until 1968 as to the Senators, for there would not be another House election before 1965 and none for the Senate prior to 1967. This delay would be unreasonable.

Nor can we now defer until the 1964 General Assembly the effectuation of our decision. Aside from the reasons just enumerated for the inadvisability of initially continuing the case, to do so now would be to allow the elections scheduled for 1963 to proceed under statutes we have found invalid. However, the present General Assembly may without question take the necessary corrective measures to readjust the district lines.

To achieve these ends, we will stay the operation of the injunction until January 31, 1963, so that the present General Assembly may be convened in special session to enact appropriate reapportion-

---

2. Such as, for example, these *Senate Districts*: (1) Accomack, Northampton, Princess Anne, Virginia Beach; (2) Franklin, Montgomery, Radford, Roanoke; and (3) Newport News, York; and these *House Districts*: (1) Botetourt,, Roanoke, Craig; (2) Chesterfield, Colonial Heights; (3) Hampton City; and (4) Portsmouth City.

ment laws, or the defendants may appeal to the United States Supreme Court. Meanwhile jurisdiction of the cause will be retained, but any further stay of the injunction must be sought from the Supreme Court or one of its Justices. If neither of the steps just mentioned is taken or, if taken, does not result either in meeting or altering our decision, then the plaintiffs may apply to this court for such further orders as may be required.

An order will be entered in accordance with this opinion.

WALTER E. HOFFMAN, District Judge (dissenting).

With deference and respect to my learned colleagues, I must dissent.

In 1931 the late Mr. Justice Holmes, speaking for the Court in Bain Peanut Co. v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228, 229, 75 L.Ed. 482 said:

"We must remember that the machinery of government would not work if it were not allowed a little play in its joints."

Unlike the legislatures of many states, Virginia has reapportioned the senatorial and house districts in accordance with the mandate of Sec. 43 of the Virginia Constitution, i. e., in the year 1932 and every ten years thereafter. Admittedly the task of reapportionment is a difficult one and, while discrimination is now apparent when considered in the light of population alone, I am unwilling at this moment to say that it is "invidious". Nor am I able to conclude in law and in fact that Virginia's 1962 Reapportionment Act constitutes "arbitrary and capricious state action" offensive to the Equal Protection Clause of the Fourteenth Amendment in the absence of further guidance from the highest court of our nation or state. In my judgment the decision of the majority places too much emphasis upon the weighted vote of one county, city, or district as contrasted with the weighted vote in another county, city or district.

The landmark decision in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 2d 663, was handed down on March 26, 1962. The opinion of the Court, written by Mr. Justice Brennan, consumes 55 pages. Separate concurring opinions by Mr. Justice Douglas, Mr. Justice Clark, and Mr. Justice Stewart require 25 pages. Dissenting opinions by Mr. Justice Frankfurter and Mr. Justice Harlan are contained within 83 pages. It is indeed difficult for judges and attorneys to fully understand the impact of Baker v. Carr—to say nothing of legislators upon whom the primary responsibility of reapportionment rests.

The General Assembly of Virginia convened in regular session during January, 1962. It meets every two years. While the specific Acts, now held to be unconstitutional by the majority, were not approved by the Governor until April 7, 1962, the General Assembly had ceased transacting its legislative business several weeks prior thereto. Thus, when Baker v. Carr was decided, the General Assembly was no longer in session. The Governor, in approving H.B. 250 and S.B. 145, took cognizance of the decision but concluded that "the recent Tennessee case need not be cause for alarm in Virginia". While I cannot agree that the entire matter may be dismissed so summarily, I am of the opinion that the federal court should abstain in order to permit the removal of the existing disparities on the state level.

This is not to suggest that the General Assembly has not already had an opportunity to correct defects in apportionment at the 1962 regular session. The Report of the Commission on Redistricting made substantial progress in adjusting the inequities, but the General Assembly did not see fit to follow this report other than in two or three instances. However that may be, the General Assembly was not confronted with Baker v. Carr, and the subsequent decisions at that time. At a later date more mature consideration would undoubtedly bring about adjustments.

Plainly there is not complete unanimity of opinion in Baker v. Carr. As

Mr. Justice Stewart said in his concurring opinion, (369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663):

"The Court today decides three things and no more: '(a) that the court possessed jurisdiction of the subject matter; (b) that a justiciable cause of action is stated upon which appellants would be entitled to appropriate relief; and (c) * * that the appellants have standing to challenge the Tennessee apportionment statutes.'

* * * * * *

"Contrary to the suggestion of my Brother Harlan, the Court does not say or imply that 'state legislatures must be so structured as to reflect with approximate equality the voice of every voter.' * * * The Court does not say or imply that there is anything in the Federal Constitution 'to prevent a State, acting not irrationally, from choosing any electoral legislative structure it thinks best suited to the interests, temper, and customs of its people.' * * * And contrary to the suggestion of my Brother Douglas, the Court most assuredly does not decide the question, 'may a State weight the vote of one county or one district more heavily than it weights the vote in another?'"

The effect of today's decision will open the floodgates to litigation which may be continuous. The majority acknowledges that "there may be other districts also disadvantaged by the reapportionment". Indeed there are although, as yet, they have not seen fit to attack the constitutionality of the Acts in controversy. Accepting the premise that an ideal representation of one Senator is 99,174 persons, and conceding that there are 11 senatorial districts which are rather obviously over-represented, where is the stopping point?

By way of illustration:

| District | Population | No. of Senators | Population per Senator |
|---|---|---|---|
| Accomack Northampton Princess Anne Virginia Beach | 131,816 | 1 | 131,816 |
| Franklin (County) Montgomery Radford Roanoke County | 129,912 | 1 | 129,912 |
| Newport News York County | 135,245 | 1 | 135,245 |

The foregoing compare somewhat favorably with the population per Senator in Fairfax which is 142,597, and which is designated as comprising Fairfax County, Fairfax City and Falls Church. The Senate disparity in the City of Norfolk (152,435) and County of Arlington (163,401) is, of course, greater.

Turning to the House of Delegates we find the ideal representation per Delegate to be 39,669 persons. As pointed out by the majority, there are 20 districts which are favored and which vary from "the ideal" by at least 25%. There are likewise districts, which, along with the plaintiffs herein, are subjected to disparity. For example:

| District | Delegates | Population | Population per Delegate |
|---|---|---|---|
| Botetourt, Roanoke County, Craig | 1 | 81,764 | 81,764 |
| Chesterfield, Colonial Heights | 1 | 80,784 | 80,784 |
| Hampton | 1 | 89,258 | 89,258 |
| Portsmouth | 2 | 114,773 | 57,386 |

No attempt has been made to cite the Delegate disparity in certain other districts, apparently under-represented, but which are included in more than one district under the 1962 Act. They are:

Amherst and Lynchburg
Henrico
Isle of Wight, Nansemond and Suffolk
Lynchburg
Roanoke County

It is sufficient to note, however, that the following districts have more cause to complain as to disparity in the House of Delegates than either Arlington or Norfolk, two of the three plaintiffs in this action:

Botetourt, Craig and Roanoke County
Chesterfield and Colonial Heights
Hampton
Portsmouth

The interlocutory order to be entered in this case will afford Virginia two alternatives—appeal to the United States Supreme Court or the convening of an extra session of the General Assembly. If the extra session is convened, the appeal will be moot. Assuming arguendo that later reapportionment takes care of the needs of Fairfax, Arlington and Norfolk, the additional representatives must be taken from other areas. We would undoubtedly be faced with further litigation as to any county, city or district where the deviation is beyond 25% of the ideal. Granting relief at this time without sufficient guideposts to govern our action establishes a dangerous precedent.

For all practical purposes this case is decided upon the exhibits and the testimony of a representative of the Bureau of Public Administration, an agency of the University of Virginia. In the report of the Bureau to the Governor's Commission on Redistricting, dated July 10, 1961, it is said:

"It is recommended that the deviation from the ideal size be as little as possible, with most deviations within 15 per cent of ideal size, and exceptions in the most difficult situations within 25 per cent. *It is indeed difficult, if not impossible, to justify deviations beyond 25 per cent.*"

I have no quarrel with the author of that statement—it may be correct—but before approving or disapproving it is my view that a three-judge federal court should be fortified with more authoritative statements as to what constitutes "invidious" discrimination or "arbitrary and capricious state action". Admittedly the population has—and will in the future—be the predominant factor in determining equality of representation. The majority concludes that the plaintiffs have proved the inequity of the allotment of representatives on the basis of population *alone*. I agree. While the burden of going forward with the evidence may then pass to the defendants, the mere failure to disprove discrimination by population does not, in my opinion, establish "invidious" discrimination when Virginia's overall picture is reviewed. It should be remembered that every intendment must be re-

solved in favor of constitutionality and the burden of showing unconstitutionality is on those who assail it. McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393; Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070; Toombs v. Fortson, 205 F.Supp. 248, 256. Proof of discrimination is not, standing alone, sufficient.

While the constitutional requirements of the State of New York differ from those in Virginia, it is significant that a three-judge federal court in New York recently upheld the apportionment of the Senate and Assembly districts in W. M. C. A., Inc. v. Simon, D.C., 208 F.Supp. 368, where the weighted vote demonstrates a far greater disparity than that which exists in Virginia.

In summary, I view the decision of the majority as, at the very least, intimating that proof of disparity in population is all that is needed. It is contrary to what was said in MacDougall v. Green, 335 U.S. 281, 283, 69 S.Ct. 1, 2, 93 L.Ed. 3:

> "To assume that political power is a function exclusively of numbers is to disregard the practicalities of government."

In the exercise of our discretionary power as a court of equity and in the public interest, I would retain jurisdiction of this case pending appropriate action in the state courts of Virginia. Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841. This is true even though the rights asserted are strictly federal in origin, Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610. I can visualize no more delicate a field for the federal courts to refrain from entering, especially where the overall representativeness is as great as in Virginia.

Virginia stands eighth in the nation in an index of representativeness among state legislatures as prepared by the Bureau of Public Administration of the University of Virginia subsequent to the passage of the 1962 Act. More propor-

tionate representation is available only in Oregon, Massachusetts, New Hampshire, West Virginia, Maine, Wisconsin and Alaska. In determining whether the 1962 Reapportionment Act constitutes "arbitrary and capricious state action" or, as described by the majority, "invidious" discrimination, are we to look at the entire pattern of apportionment or should we only consider apportionment of one district as against another? These are, in my judgment, unanswered questions.

One must look to the background of Baker v. Carr in order to arrive at the reason for the conclusion reached by the United States Supreme Court. Tennessee's Constitution provided a standard for allocating legislative representation among the several counties or districts according to the total number of qualified voters residing in the respective counties. Decennial reapportionment was likewise required. For a period of 60 years since 1901, all proposals for reapportionment were defeated in both Houses of the General Assembly. There was no provision for initiative and referendum. The constitutional convention route was thwarted by the Assembly where the call must originate. Of particular significance is the fact that the voters endeavored to proceed in the Tennessee Courts without success. These efforts, among others, caused Mr. Justice Clark to say (369 U.S. 259, 82 S.Ct. 732):

> "I have searched diligently for other 'practical opportunities' present under the law. I find none other than through the federal courts."

It was as a last resort that Mr. Justice Clark would "consider intervention by this Court into so delicate a field". Simply stated there was no other relief available to the people of Tennessee.

That state courts are open to voters seeking reapportionment rights under the Equal Protection Clause of the Fourteenth Amendment and Civil Rights Act is plain. Scholle v. Hare, 369 U.S. 429, 82 S.Ct. 910, 8 L.Ed.2d 1, where the origin of the litigation was in the state

court; Brown v. Saunders, 159 Va. 28, 166 S.E. 105, where the Supreme Court of Appeals of Virginia, held the Acts of Assembly, 1932, to be void by reason of a division of the state into congressional districts as being in conflict with Section 55 of the Constitution of Virginia. And in Lein v. Sathre, 201 F.Supp. 535, a three-judge federal court in North Dakota stayed proceedings to afford an opportunity to the Supreme Court of North Dakota to pass upon questions arising under the North Dakota reapportionment provisions contained in its Constitution. As early as 1951, a three-judge federal court in Pennsylvania, Remmey v. Smith, 102 F.Supp. 708, 711, app. dism. 342 U.S. 916, 72 S.Ct. 368, 96 L.Ed. 685, speaking through Circuit Judge Biggs, stated in an action to declare an apportionment act unconstitutional:

> "The determination which the plaintiffs would have us make lies in that extremely sensitive field, the relation of the powers of the National Government to those of the States. Here, of all places, a federal court should tread warily and with great circumspection and should forego any action where relief may be furnished by the State. This court should not intervene where an apparent, but untried, remedy may lie in the Courts of the Commonwealth of Pennsylvania."

I agree that there is no ambiguity in the particular statutes under consideration and they are not in need of interpretation *per se*. As construed in conjunction with Sections 41, 42 and 43 of the Virginia Constitution, a state court determination will, at the very least, furnish a guide for future action. I cannot agree that we should disregard the doctrine of abstention merely because the subject matter of the inquiry lies within the competence of a federal court sitting in Virginia; nor do I believe that ambiguity and need for interpretation constitute the only basis for resorting to abstention. There are numerous cases where abstention has been sanctioned on grounds of comity with the States in order to avoid a result in "needless friction with State policies". Railroad Com. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Pennsylvania v. Williams, supra. That the United States Supreme Court favors the doctrine of abstention is apparent from its more recent decisions. Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058; Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186. Of the four cases decided on June 8, 1959, involving the doctrine of abstention, only in County of Alleghany v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163, did the Supreme Court reject abstention and the initial paragraph of the opinion pointedly suggests that the case *"would not entail the possibility of a premature and perhaps unnecessary decision of a serious federal constitutional question, would not create the hazard of unsettling some delicate balance in the area of federal-state relationships, and would not even require the District Court to guess at the resolution of uncertain and difficult issues of state law."*

Since Baker v. Carr there have been only two cases, from which it appears that the doctrine of abstention was affirmatively raised, where the court declined to abstain. In Toombs v. Fortson, 205 F.Supp. 248, a three-judge federal court in Georgia elected to dispose of the entire case without "leaving part of it in limbo pending a later decision by a State Court". Such is not this case. I do not agree with that portion of the opinion in Toombs v. Fortson which intimates that Baker v. Carr has held that the doctrine of abstention should be ignored in apportionment cases. Likewise in Sanders v. Gray, D.C., 203 F.Supp. 158, a three-judge federal court in Georgia, composed of two of the three judges sitting in Toombs, held that there was no adequate state remedy in view of the holding of the Supreme Court of Georgia in Cox v. Peters (1951) 208 Ga. 498, 67 S.E.2d 579.

Unlike Lisco v. McNichols, D.C., 208 F.Supp. 471, where the General Assembly of Colorado had repeatedly refused to apportion in accordance with the Colorado Constitution, Virginia has reapportioned at ten year intervals as required by the bare wording of her Constitution. To prevent a multitude of actions which will undoubtedly result following any hasty reapportionment at any extra session of the General Assembly of Virginia, the entire matter may be resolved by retaining jurisdiction and relegating the parties to the state court for a decision under Virginia's Declaratory Judgment Act.

Wisconsin, a state which claims greater proportionate representativeness than Virginia, has been involved in recent apportionment litigation. Wisconsin v. Zimmerman, 209 F.Supp. 183. Expressing a reluctance to enter orders or directives in such a case, the three-judge federal court dismissed the action without prejudice to the rights of plaintiffs to again file suit after August 1, 1963. The Court noted that a great disparity in population did exist, although not comparable with Tennessee. The action by the federal court in Wisconsin was taken despite the fact that (1) the Wisconsin Supreme Court "had again denied relief", (2) the 1961 legislature did not comply with the requirements of the state constitution, (3) the 1962 special session did nothing to afford relief, and (4) the next session of the legislature would not convene until January, 1963.

We are told that the element of time compels us to act. It is quite true that candidates for the House and Senate must announce their intention by April 15, 1963, if their names are to be considered in any primary election next July. Unless a candidate elects to proceed by way of mandamus in the Supreme Court of Appeals of Virginia— as was done in Brown v. Saunders, supra —it is a foregone conclusion that a proceeding under the Virginia Declaratory Judgment Act would not reach the highest court of the State until after the 1963 general election. At that time members of the House and Senate would be elected under the 1962 Reapportionment Act. If the regular session of the General Assembly failed to take appropriate action, the state court, or federal court, if necessary, could then act. If the 1962 Act is unconstitutional, there is no security of office afforded to the members of the General Assembly. They would, of course, remain as a legislative body for the purpose of doing what the majority opinion now compels them to do in the absence of an appeal.

If they fail to adhere to their constitutional duty, the 1962 Act does not become constitutional by mere inaction. When we balance the equities, it is certainly more appropriate to permit the General Assembly of Virginia to maturely consider the vital issue of voter representation in the light of Baker v. Carr and subsequent decisions, rather than to force hasty action which has been known to bring about the enactment of obviously unconstitutional measures. While I would favor the doctrine of abstention to permit the state court to initially determine the questions at hand, as a final alternative I would continue this case until thirty days following the adjournment of the next regular or extra session of the General Assembly of Virginia.

In the event the defendants do not see fit to appeal from the order to be entered pursuant to the majority opinion, and if the General Assembly is not convened in extra session by the Governor, the only alternative will be for this Court to reapportion the State in conformity with legal standards. While I agree that this may be done where the legislature fails to act, it would undoubtedly result in the adoption of Plan "A" (with minor exceptions) which is substantially a mathematical computation according to population, with a maximum deviation of twenty-four per cent. Certainly this Court has nothing else upon which to base its action. When we consider other states, such as New York, Maryland and Hawaii, where the concentration of population is in one major city, it may be

inappropriate to rely so heavily upon population. With the trend of population in Virginia toward urban development, the voting power in this State may soon be vested in the cities. It may benefit Virginia as a whole, but this decision should rest with its elected representatives and not with a federal court.

A new approach created by new decisions should give rise to action with "deliberate speed" in protecting constitutional rights of those who are subjected to discrimination, but it does not necessarily mean that such discrimination must be corrected forthwith.